**GUBERNICK LAW, P.L.L.C**.
Benjamin Gubernick, CA State Bar No. 321883
10720 W. Indian School Rd., Suite 19, PMB 12
Phoenix, Arizona 85037
Telephone: (734) 678-5169
Email: ben@gubernicklaw.com

David N. Lake, CA State Bar No. 180775
**LAW OFFICES OF DAVID N. LAKE,**
  **A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 479-9990
Email: david@lakelawpc.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE HICKS, KUANG TING CHONG, and STEPHANIE MOORE, individuals;<br><br>             Plaintiffs,<br><br>      v.<br><br>BANK OF AMERICA, N.A., a Delaware corporation; and DOES 1-10, inclusive,<br><br>             Defendants. | CASE NO.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT**<br><br>1. NEGLIGENCE;<br>2. VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT;<br>3. BREACH OF CONTRACT;<br>4. VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT;<br>5. BREACH OF IMPLIED DUTY OF COMPETENCE; and<br>6. VIOLATION OF UNFAIR COMPETITION LAW<br><br>(Jury Trial Demanded) |

Julie Hicks ("Hicks"), Kuang Ting Chong ("Chong"), and Stephanie Moore ("Moore") ("Hicks") (collectively, "Plaintiffs"), through undersigned counsel, on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Bank of America, N.A. ("BOA") and DOE Defendants 1-10 (the "DOE Defendants") (collectively, "Defendants"), and allege upon personal knowledge as to their own actions, and upon information and belief as to counsel's investigations and all other matters, as follows:

## NATURE OF ACTION

1. This class action seeks recovery for California residents who experienced interruptions in access to their unemployment benefits because of intentional and negligent misconduct by BOA.

2. Starting in 2020, numerous individuals began exploiting BOA's lax security measures to gain unauthorized access to Employment Development Department ("EDD") debit cards ("EDD Cards").

3. These debit cards were all issued by BOA. California residents receiving EDD benefits are issued a debit card from BOA along with a corresponding BOA account. EDD benefits are directly deposited into these BOA accounts. Beneficiaries own their accounts. The BOA account and debit card are the only means of accessing unemployment benefits for hundreds of thousands of Californians.

4. BOA chose to respond to the systemic failures in its security measures by either transferring funds out of recipients' accounts, revoking credits to the accounts to create negative balances, or simply locking debit cards and preventing access to benefits. As a result, tens of thousands of Californians were deprived of access to their only source of income during a global pandemic.

## PARTIES

5. Plaintiff Julie Hicks is, and at all times mentioned herein was, an individual residing in the State of California, County of Santa Clara.

6. Plaintiff Kuang Ting Chong is, and at all times mentioned herein was, an

individual residing in the State of California, County of Los Angeles. He receives unemployment benefits from the State of California.

7. Plaintiff Stephanie Moore is, and at all times mentioned herein was, an individual residing in the State of California, County of Los Angeles. She receives unemployment benefits from the State of California.

8. Defendant Bank of America, N.A. ("BOA") is a Delaware corporation. Its principal place of business is located at 100 North Tryon Street, Charlotte, North Carolina 28255.

9. Plaintiffs do not know the true names and capacities of the defendants sued herein as DOES 1 through 10 ("DOE Defendants"), inclusive, and therefore sue said DOE Defendants by fictitious names. Plaintiffs are informed and believe and based on such information and belief allege that each of the DOE Defendants are contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiffs will amend this Complaint to set forth the true names and capacities of each DOE Defendant when the same are ascertained.

10. Plaintiffs are informed and believe and based on such information and belief allege that BOA and the DOE Defendants, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein. Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over this matter under 28 U.S. Code § 1332(a) because Plaintiffs are residents of California, BOA is a Delaware corporation with its principal place of business in North Carolina, and the amount in controversy

exceeds $75,000 exclusive of interest and costs. This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S. Code § 1332(d), because the parties are minimally diverse and the amount in controversy exceeds $5,000,000.

12. Venue is proper as this action is part of a multidistrict litigation assigned to the Southern District of California.

## FACTUAL ALLEGATIONS

13. Plaintiffs are unemployed California residents. At all relevant times they received unemployment benefits from EDD. These unemployment benefits were provided to them through EDD Cards.

14. All EDD Cards are linked to BOA accounts. EDD distributes benefits to holders of EDD Cards by depositing money in the BOA accounts associated with the beneficiary.

15. Beneficiaries who receive their benefits using an EDD Card must agree to the "California Employment Development Department Debit Card Account Agreement" (the "Account Agreement"). The Account Agreement states that the beneficiary's relationship to BOA is governed by Regulation E, and that, at a minimum, holders of EDD Cards have the same protections from risk of loss as those provided by Regulation E.

16. No EDD Cards issued by BOA prior to 2021 have an "EMV" chip. EMV stands for "Europay, Mastercard, and Visa." EMV chips are small, metallic squares that create unique transaction data each time the chip is used to make a purchase. This differs from obsolete magnetic-stripe cards, which use the same transaction data each time a purchase is made.

17. Debit cards without chips are extremely easy for thieves to duplicate. All a thief needs to create a duplicate card is data from a single debit card purchase.

18. As identical data from magnetic-stripe purchases is provided every time the cardholder makes a purchase, the information commonly finds its way to online "dark web" brokers. In contrast, data from past EMV chip purchases is essentially useless to

would-be thieves.

19. As debit cards with EMV chips are far more secure, in recent years they have become ubiquitous for credit card and debit card issuers. They are also inexpensive to produce. Indeed, on information and belief, EDD Cards are the only cards BOA issues that do not have an EMV chip.

20. In 2020, large numbers of individuals targeted the security weaknesses in BOA's EDD Cards. These individuals used clone cards, likely created from information obtained on the dark web, to initiate fraudulent ATM withdrawals throughout California. *See, e.g.,* <https://losangeles.cbslocal.com/2020/10/29/bank-of-america-freezes-edd-accounts-of-nearly-350000-unemployed-californians-for-suspected-fraud/>.

21. In October 2020, BOA decided to respond to this uptick in fraudulent withdrawals by preventing nearly 350,000 unemployed Californians from accessing their unemployment benefits. *Id*.

22. BOA denied EDD benefits recipients access to funds by freezing accounts and by reversing credits for fraudulent withdrawals that BOA had previously granted. BOA reversed credits to create negative balances in the accounts, thereby preventing anyone—including the accounts' lawful beneficiaries—from accessing funds already in the account or new funds deposited into the accounts by EDD.

23. On or about July 20, 2020, an unknown person used a cloned EDD Card to steal $1,000 in unemployment benefits from Chong's account. Chong learned of the fraud on July 20, 2020 and contacted BOA to report the theft the same day.

24. On July 21, 2020, Chong filed a police report with the Alhambra police department. The officer Chong spoke to initially confused him with another holder of an EDD Card who had also just had funds stolen.

25. On July 31, 2020, BOA credited $1,000 to the account associated with Chong's EDD Card.

26. On September 2, 2020, Chong received a notice from BOA that it had completed its investigation, and that the $1,000 credit to his account was now permanent.

27. On October 4, 2020, BOA nonetheless debited $1,000 from Chong's account, creating a negative balance. The account history on BOA's website claimed that the debit was made by "State of CA EDD Unemployment."

28. In reality, however, the October 4, 2020 debit was made by BOA.

29. Chong repeatedly contacted BOA and EDD in an effort to obtain access to his $1,000 in withheld unemployment benefits. In an October 15, 2020 phone call with BOA's claim department, Chong was told his issue would be resolved "in the order it was received."

30. Months went by before Chong was granted access to his withheld unemployment benefits.

31. On July 18, 2020, Moore was the victim of a fraudulent $1,000 withdrawal from an ATM machine and a separate fraudulent withdrawal of $482 at a Target retail store. These transactions depleted all the funds from her account. Moore discovered the fraud on July 18, 2020 when she tried to purchase ice cream for her daughter and the transaction was declined.

32. Moore reported the fraudulent withdrawal on July 18, 2020, within minutes of discovering that unknown persons had depleted the funds in her account.

33. On or about July 30, 2020 Moore was granted a $1,482 credit to her account by BOA.

34. On or about the 7th or 8th of August 2020, BOA informed Moore in writing that the provisional $1,482 credit had been made permanent.

35. On September 30, 2020 Moore attempted to purchase a tire for her vehicle. The transaction was declined. Moore attempted to check the balance in her BOA EDD account and was unable to log into the account. On information and belief BOA froze Moore's account on or about September 30, 2020 without providing prior notice to Moore.

36. On or about October 4, 2020, BOA debited $1,482 from Moore's account. Moore's account history on BOA's website claimed that the debit was made by "State of

6
COMPLAINT (CLASS ACTION)

CA EDD Unemployment." This created a negative balance.

37. On October 12, 2020, Moore spoke with a BOA employee who admitted that BOA had debited the money from Moore's account.

38. As with Chong's account, Moore's account was not debited by EDD, but rather BOA.

39. BOA sent identical letters to Chong and Moore dated October 2, 2020. Upon information and belief BOA issued identical letters retracting provisionally granted credits or permanently granted credits on October 2, 2020 to numerous EDD beneficiaries.

40. While Chong and Moore continued receiving EDD direct deposits they were denied access to these funds as the direct deposit was applied against the negative account balance created by BOA.

41. On September 3, 2020, an unauthorized third party made a $1,000 withdrawal from Hicks' EDD accounts.

42. The third party subsequently made seven more $1,000 fraudulent withdrawals from Hicks' accounts, on each day, until September 11, 2020, when Hicks' account was frozen by BOA.

43. Hicks timely reported the unauthorized withdrawals, and verified her identity with EDD and BOA. Nonetheless, BOA has refused to reimburse the fraudulent withdrawals or unfreeze Hicks' account. As a result, Hicks has been denied use of a further $21,000 EDD has deposited in her account over the last nine months.

44. The electronic fund transfers from Plaintiffs' accounts, and numerous other EDD beneficiary accounts, were initiated by a person other than the consumer without actual authority to initiate the transfer. No one besides BOA received a benefit from the transfers.

## CLASS ACTION ALLEGATIONS

45. Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Fed. R. Civ. P. 23. Plaintiffs seek to represent the

following putative classes:

 **The Access Denial Class**: All holders of EDD Cards who were denied access to unemployment benefits as a result of BOA's decision to freeze accounts or reverse prior credits from January 1, 2020 to the present.

 **The Cloned Card Class**: All holders of EDD Cards who, from the earliest applicable statute of limitations to the present, had an EDD Card that did not have an EMV chip and who experienced an unauthorized withdrawal by a third party using a cloned EDD Card.

46. Specifically excluded from the Classes are: (a) any officers, directors or employees of Defendants; (b) any judge assigned to hear this case (or spouse or immediate family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and (e) any attorneys of record and their employees.

47. Plaintiffs reserve the right to amend or modify the class definition with greater specificity, by further division into subclasses, or by limitation to particular issues.

48. **Numerosity**. The class members are so numerous that joinder of each individual class member would be impracticable and unfeasible, and the disposition of their claims as a class will benefit the parties, the Court, and the interests of justice. The precise number of class members is readily available from a review of Defendants' business records.

49. **Ascertainability**. The proposed Classes are ascertainable from objective criteria. Specifically, Defendant maintains business records which include the names, contact information and other identifying information of members of the proposed Classes.

50. **Commonality and Predominance**. There is a well-defined community of interest among the Classes' members and common questions of *both* law and fact predominate over questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

A. Whether BOA's decision not to use EMV chips in its EDD Cards was reasonable;

B. Whether BOA's actions violated the Electronic Funds Transfer Act;

C. Whether BOA's actions constitute a breach of contract;

D. Whether BOA's actions violate California's consumer protection laws;

E. Whether BOA's actions breached the implied duty of competence owed by BOA;

F. Whether BOA's decision not to use EMV chips in its EDD Cards proximately resulted in Class members losing access to their unemployment benefits; and

G. Whether BOA's actions constitute an unfair business practice under California's Business & Professions Code §17200 *et seq.*.

51. **Typicality**. Plaintiffs' claims are typical of those of all Class members in that they arise out of the same course of conduct of Defendants, and enable them to seek the same relief under the same theories of recovery. The effort Plaintiffs undertake to pursue their own claims will significantly benefit the Classes' members because of the identical nature of the issues across the Classes.

52. **Adequacy of Representation**. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiffs share a common interest with the Classes' members. Plaintiffs have suffered an injury-in-fact as a result of Defendants' conduct, as alleged herein. Plaintiffs have retained counsel who are competent and experienced in the prosecution of complex class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously and faithfully for the benefit of the Classes' members. Plaintiff has no interests contrary to the Classes' members, and will fairly and adequately protect the interests of the Classes.

53. **Community of Interest.** The proposed Classes have a well-defined community of interest in the questions of fact and law to be litigated. These common questions of law and fact predominate. The named Plaintiffs' claims are typical of the

Classes' members.

54. **Superiority**. The certification of the Classes in this action is superior to the litigation of a multitude of cases by members of the putative Classes. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are members of the Classes who are unlikely to join or bring an action due to, among other reasons, their reluctance to spend large sums of time and money to recover a relatively modest individual recovery. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among Class members in relationship to the benefits received. The damages and other potential recovery for each individual member of the Classes are modest relative to the substantial burden and expense of individual prosecution of these claims. Given the dollar amount of the individual members of the Classes' claims, few, if any, could or would afford to seek legal redress individually for the wrongs complained of herein. Even if the members of the Classes themselves could afford individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

55. In the alternative, the above-referenced Classes may be certified because:

(a) The prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class members' claims which would establish incompatible standards of conduct for Defendants;

(b) The prosecution of separate actions by individual members of the Classes would create a risk of adjudications which would as a practical matter be

dispositive of the interests of other members of the Classes who are not parties to the adjudications, or which would substantially impair or impede the ability of other members to protect their interests; and,

(c) Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the Classes.

## FIRST CLAIM FOR RELIEF

### Negligence

### (By all Plaintiffs, on behalf of both Classes)

56. Plaintiffs incorporate all preceding and succeeding allegations as if fully set forth herein.

57. By holding unemployment benefits for members of the Cloned Card Class and issuing EDD Cards, BOA had a duty of care to take reasonable security precautions to prevent EDD Cards from being copied by thieves. Defendants breached that duty by failing to use EMV chips in their EDD Cards, and that failure proximately led to tens of thousands of unauthorized withdrawals from class member accounts, and loss of access of benefits during a global pandemic.

58. Plaintiffs and all members of the Cloned Card Class suffered damages because of Defendants' conduct.

59. Plaintiff and all members of the Cloned Card Class are entitled to actual damages, interest, and injunctive relief requiring BOA to institute basic security precautions sufficient to avoid future widespread cloning of EDD Cards.

60. As to the Access Denial Class, BOA had a duty to take reasonable steps to timely and adequately investigate and respond to claims of fraud, and to restore access to EDD benefits to victims of fraudulent withdrawals.

61. BOA breached that duty by instituting wholesale account freezes, reversing credits issued to cardholder accounts, and failing to put in place sufficient claims investigation procedures and infrastructure.

62. As a proximate result of BOA's conduct, members of the Access Denial Class lost access to their unemployment benefits during a global pandemic.

63. Members of the Access Denial Class are entitled to actual damages, interest, and injunctive relief requiring BOA to institute reasonable claims resolution processes.

## SECOND CLAIM FOR RELIEF

**Violation of The Electronic Funds Transfer Act 15 USC § 1963 *et seq.* and 12 C.F.R. § 205.1 *et seq.***

**(By all Plaintiffs, on behalf of the Access Denial Class)**

64. Plaintiffs incorporate all preceding and succeeding allegations as if fully set forth herein.

65. Plaintiffs bring this cause of action pursuant to the United States Electronic Funds Transfer Act (EFTA) and 12 C.F.R. § 205.1 to 205.20 (Regulation E of the EFTA).

66. Defendants engaged in unlawful conduct under Regulation E by seizing unemployment benefits in accounts for which Plaintiffs and members of the Access Denial Class were beneficiaries and by denying access to accounts.

67. Chong and Moore provided notice to BOA less than two days after the fraudulent transactions occurred in each of their respective accounts. Per 12 C.F.R. § 205.6(b)(1) Plaintiffs' liability was capped at $50. Despite this clear cap on liability BOA subjected Chong to $1,000 in liability and Moore to $1,482 in liability. Upon information and belief numerous other class members gave timely notice of the fraudulent activity and are also limited to $50 of liability per 12 C.F.R. § 205.6(b)(1).

68. 12 C.F.R. § 205.6(b)(2) establishes a maximum amount of liability of $500 when notice of the unauthorized electronic funds transfer is not provided to the financial institution within two business days. Plaintiffs Chong and Moore have discussed their situations with other similarly situated individuals who are members of the class. In all of those cases BOA debited the entire amount of the provisional credit in excess of the limits set by 12 C.F.R. § 205.6(b).

69. With regard to any class members who did not directly provide BOA with actual notice, BOA was on constructive notice of the unauthorized electronic funds transfers pursuant to 12 C.F.R. § 205.6(b)(5)(iii). Numerous unauthorized electronic fund transfers occurred from EDD accounts, upon information and belief, many were timely reported to BOA. BOA was receiving so many calls about these unauthorized transfers in the relevant time frames that the named Plaintiffs and class members would routinely be on hold for several hours at a time when they called in to make reports or ask BOA for information. The widespread fraud specifically targeting EDD beneficiaries was also widely reported in the media.

70. In no event should any class member be liable for over $500 of damages under 12 C.F.R. § 205.6. BOA has failed to comply with 12 C.F.R. § 205.6 by putting unemployed Californians on the hook for thousands of dollars of liability in direct violation of federal law.

71. As a direct and proximate result of Defendants' violation of the Regulation E, Plaintiffs and members of the Access Denial Class have lost money.

72. Plaintiffs, on behalf of themselves and the Access Denial Class, seek: (a) an injunction barring Defendants from illegally debiting unemployment benefits; (b) restitution of all unemployment benefits funds improperly debited by Defendants; (c) statutory damages; (d) actual damages; (e) attorneys' fees and costs of suit; and (f) interest.

## THIRD CLAIM FOR RELIEF

### Breach of Contract

**(By all Plaintiffs, on behalf of the Access Denial Class)**

73. Plaintiffs incorporate all preceding and succeeding allegations as if fully set forth herein.

74. BOA utilizes a contract of adhesion for all Californians receiving EDD benefits that is purportedly agreed whenever an individual "us[es] or allow[s]" another to use" the beneficiaries EDD Card.

75. The contract of adhesion includes a section titled, "Bank of America's 'Zero Liability' Policy for Unauthorized Transactions." That sections sates in pertinent part:

> Federal law (described in the section below entitled 'Regulation E Liability Disclosure: Your Liability in Case of Loss, Theft, or Unauthorized Transactions') may limit your liability for unauthorized transactions on your Account, but you may still be liable in some circumstances. Under the Bank of America "zero liability" policy, you may incur no liability for unauthorized use of your Card up to the amount of the unauthorized transaction, provided you notify us within a reasonable time of the loss or theft of your Card, Card number or PIN or its unauthorized use, subject to the following terms and conditions…

76. The contract of adhesion states that a reasonable period of time is decided solely at BOA's discretion but cannot be shorter than the time limit provided in Regulation E.

77. Plaintiffs and all members of the Access Denial Class have not been provided with the benefit of BOA's "Zero Liability" policy. In cases where notice was provided in a reasonable time, Plaintiffs and all members of the class: (i) did not receive reimbursement in a timely manner or; (2) did receive any reimbursement whatsoever by BOA for the unauthorized withdrawals.

78. Moreover, BOA's decision to revoke prior credits for fraudulent withdrawals is manifestly incapable with its "Zero Liability" policy.

79. Plaintiffs and all members of the Access Denial Class suffered damages as a result of Defendants' conduct.

80. Plaintiffs and all members of the Access Denial Class are entitled to damages, interest, and injunctive relief requiring BOA to institute basic security precautions sufficient to avoid future widespread denials of account access.

### FOURTH CLAIM FOR RELIEF

**Violation of Cal. Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq.***

**(By Chong and Moore, on behalf of the Cloned Card Class)**

81. Plaintiffs incorporate all preceding and succeeding allegations as if fully set forth herein.

82. The California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq.*,

(the "CCPA") required BOA to provide reasonable security for Plaintiffs' personal information.

83. The information extracted from an EDD Card during the cloning process is "personal information" as that term is used in Cal. Civ. Code § 1798.100(d)(1).

84. When an EDD Card without an EMV chip is cloned, an "unauthorized access and exfiltration, theft, or disclosure" of personal information occurs. Cal. Civ. Code § 1798.150(a).

85. By failing to use EMV chips in its EDD Cards, BOA breached its duty to implement reasonable security measures. As a proximate result of BOA'S failure, Plaintiffs' EDD Cards were cloned and they suffered unauthorized account withdrawals.

86. Plaintiffs sent written notice of BOA's violation of the CCPA at least 30 days prior to bringing suit under the CCPA and BOA failed to cure its violation.

87. Plaintiffs and all people similarly situated are entitled to damages including statutory interest, statutory damages, reasonable attorneys' fees, costs of suit, and injunctive relief requiring BOA to implement reasonable security measures.

## FIFTH CAUSE OF ACTION

**Breach of Implied Duty of Competent Performance**

**(By all Plaintiffs, on behalf of both Classes)**

88. Plaintiffs incorporate all preceding and succeeding allegations as if fully set forth herein.

89. California law required BOA to perform its obligations under the Account Agreement competently and with reasonable care.

90. As to the Cloned Card Class, BOA breached its implied duty of competent performance by failing to use EMV chips in its EDD Cards.

91. As to the Access Denial Class, BOA breached its implied duty of competent performance by failing to implement an effective claims resolution process and by engaging in wholesale account freezes and credit reversals.

92. As a proximate result of BOA's breach of its implied duty of competence,

Plaintiffs and all similarly situated persons suffered unauthorized withdrawals from their accounts.

93. Plaintiffs and all similarly situated persons are entitled to direct damages, interest, and injunctive relief requiring BOA to competently perform its contractual obligations going forwards.

## SIXTH CLAIM FOR RELIEF

**Violation of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.***

**(By all Plaintiffs, on behalf of the Access Denial Class)**

94. Plaintiffs incorporate all preceding and succeeding allegations as if fully set forth herein.

95. Plaintiffs bring this cause of action pursuant to California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("the UCL").

96. Defendants engaged in unlawful conduct under the UCL by seizing unemployment benefits in accounts for which Plaintiffs and members of the Class were beneficiaries.

97. Defendants' conduct was "unlawful" as that term is used in the UCL in that it violated the various statutes previously noted, including Cal. Civ. Code § 1798.100, *et seq.*, 15 USC § 1963 *et seq.* and 12 C.F.R. § 205.1 *et seq.*

98. Defendants' conduct was also "fraudulent" as that term is used in the UCL in that BOA falsely represented that the funds were debited by EDD, when in fact they were debited by BOA.

99. As a direct and proximate result of Defendants' violation of the UCL, Plaintiffs and members of the Class have lost money.

100. Plaintiffs, on behalf of themselves and the Class, seek: (a) an injunction barring Defendants from illegally debiting unemployment benefits; and (b) restitution of all unemployment benefits funds improperly debited by Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly aggrieved persons, pray for judgment against Defendants as follows:

1. For an order certifying that the action may be maintained as a class action and appointing Plaintiffs and their undersigned counsel to represent the Classes in this litigation;

2. For an order declaring that the acts and practices of Defendants were negligent;

3. For an order declaring that the acts and practices of Defendants violated the Electronic Funds Transfer Act 15 USC § 1963 *et seq.* and 12 C.F.R. § 205.1 *et seq.*;

4. For an order declaring that the acts and practices of Defendants violated the CCPA;

5. For an order declaring that the acts and practices of Defendants violated the Account Agreement;

6. For a permanent injunction enjoining Defendants from continuing to harm Plaintiffs and members of the Classes and the public;

7. Compensatory damages;

8. Restitution as allowed by the UCL;

9. An award of reasonable attorneys' fees and costs;

10. Such other and further relief as the Court may deem just and proper.

///

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial of the claims to the extent authorized by law.

Respectfully submitted,

GUBERNICK LAW, P.L.L.C.

Date: July 12, 2021                              By: _____
Benjamin Gubernick
GUBERNICK LAW, P.L.L.C.
Benjamin Gubernick (SBN 321883)
 E-mail: ben@gubernicklaw.com
10720 W. Indian School Rd., Suite 19, PMB 12
Phoenix, AZ 85037
Telephone (734) 678-5169

--And—

David N. Lake, State Bar No. 180775
**LAW OFFICES OF DAVID N. LAKE,
 A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 479-9990
Email: david@lakelawpc.com

Attorneys for Plaintiffs